IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

COMPLETE PHARMACY RESOURCES,  §
LTD.,                          §
                               §
            Plaintiff,         §
                               §
v.                             §        CIVIL ACTION NO. H-04-3477
                               §
ROBERT FELTMAN and PLINC       §
SYSTEMS, INC.,                 §
                               §
            Defendants.        §

## MEMORANDUM OPINION AND ORDER

Plaintiff, Complete Pharmacy Resources, Ltd. ("CPR"), brings this action against defendants, Robert Feltman and Plinc Systems, Inc., for conversion, misappropriation of trade secrets, and breach of a confidential relationship.   Pending before the court is Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment (Docket Entry No. 13).   For the reasons discussed below, the court will deny defendants' motion.

## I.   Factual and Procedural Background

CPR, a limited partnership located in Houston, Texas, provides interim employment services to hospital and retail pharmacies.[1]   In

---

[1]Plaintiff's Original Petition, at ¶¶ 2, 7, attached to Notice of Removal, Docket Entry No. 1.

2002 CPR asked Kitba Consulting Services, L.P. ("Kitba") to develop
for use in its business a Microsoft Access Scheduling Database.[2]
The two entered into a written agreement setting out a description
of the project and the conditions under which Kitba would develop
the software system.[3]   Among other terms, Kitba was to perform
services as an independent contractor, neither would disclose to
third parties any confidential information belonging to the other,
and CPR would

> remain the sole owner of all inventions, discoveries,
> patents, patent applications, software, copyrights, and
> copyrightable works, ideas, trade secrets and other
> intellectual property rights incorporated into the
> products to be delivered by Kitba under this Agreement,
> including but not limited to any enhancements,
> improvements, or derivative works developed by Kitba in
> connection with such intellectual property owned by
> [CPR].[4]

The agreement also noted that "[e]xcept as specifically set forth"
therein, CPR would "not have or acquire any rights to any patents,
patent applications, inventions, discoveries, trade secrets, or
other intellectual property rights of Kitba, including rights
related to such items not incorporated in the deliverables under

---

[2]<u>Id.</u> at ¶ 7.

[3]<u>Id.</u>; Services Agreement, Appendix D attached to Defendants'
Motion to Dismiss for Failure to State a Claim and Alternate
Motion for Summary Judgment, Docket Entry No. 13.

[4]Services Agreement, at pp. 2-3, Appendix D attached to
Defendants' Motion to Dismiss for Failure to State a Claim and
Alternate Motion for Summary Judgment, Docket Entry No. 13.

this Agreement."[5]  CPR contends that it "considered the software system being developed by Kitba for CPR to be confidential and proprietary"[6] -- that the agreement provided that CPR "would be the exclusive owner of the system."[7]

Kitba delivered the system, titled Complete Works, to CPR in January of 2003.[8]  Sometime thereafter CPR hired defendant Robert Feltman to perform maintenance, upgrades, or other services on Complete Works.[9]  Feltman, who had been employed at Kitba when Complete Works was in development, claims that the program Kitba delivered to CPR "did not work well at all."[10]  He states that CPR asked him to "re-write a program from scratch" and that he did so.[11] The resulting product, he contends, was also called Complete Works.[12]

---

[5]Id. at 3.

[6]Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment ("Plaintiff's Response"), Docket Entry No. 18, p. 3 (citing Affidavit of Matthew Baker, Docket Entry No. 19, p. 2).

[7]Plaintiff's Original Petition, at ¶ 7, attached to Notice of Removal, Docket Entry No. 1.

[8]Plaintiff's Response, Docket Entry No. 18, p. 3.

[9]Id.

[10]Declaration of Robert A. Feltman, at ¶ 2, Exhibit A attached to Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment, Docket Entry No. 13.

[11]Id.

[12]Id.

While he was providing services for CPR, Feltman incorporated defendant Plinc Systems, Inc. ("Plinc").[13]   The instant dispute arose in May of 2004 when CPR allegedly learned that Feltman and his company were "considering marketing the CPR system to others."[14] CPR demanded return of all copies of what it claimed was its software system, and it pressed Feltman and Plinc to identify persons or entities to whom they had disclosed relevant information.[15]   Disputing that CPR owned the software, Feltman and Plinc refused.[16]  CPR alleges that it later discovered that Feltman and Plinc sold a copy of the software system to a CPR competitor.[17]

CPR filed suit in Texas state court in June of 2004 asserting claims for conversion, misappropriation of trade secrets, and breach of a confidential relationship.[18]   Although CPR did not allege a claim for copyright infringement, defendants removed the case to federal court asserting that "plaintiff . . . allege[s] . . . violations of copyright."[19]  Defendants argue that CPR's suit

---

[13]Id.

[14]Plaintiff's Original Petition, at ¶ 10, attached to Notice of Removal, Docket Entry No. 1.

[15]Id. at ¶ 11.

[16]Id. at ¶¶ 10-11.

[17]Id. at ¶ 10; Plaintiff's Response, Docket Entry No. 18, p. 4 (citing Affidavit of Matthew Baker, Docket Entry No. 19, p. 3).

[18]Plaintiff's Original Petition, attached to Notice of Removal, Docket Entry No. 1.

[19]Notice of Removal, Docket Entry No. 1.

involves a copyright claim, over which federal courts have exclusive jurisdiction under 28 U.S.C. § 1338(a).[20]

## II.  Standard of Review

### A.  Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted

Defendants' motion asks the court to dismiss plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[21]  However, motions to dismiss for failure to state a claim on which relief may be granted must be filed before responsive pleadings.  Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999).  Because defendants filed an answer and asserted counterclaims before filing the instant motion, the court will not treat this motion as a Rule 12(b)(6) motion to dismiss.

### B.  Rule 12(c) Motion for Judgment on the Pleadings

In the alternative, defendants ask the court to consider this motion according to Rule 12(c) or Rule 56 of the Federal Rules of Civil Procedure.[22]  Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  FED. R. CIV. P.

---

[20]Id.

[21]Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment, Docket Entry No. 13, p. 2.

[22]Id. at 2-3.

12(c).  Rule 12(c) motions permit the court "'to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts.'"  Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002) (quoting Herbert Abstract Co. v. Touchstone Properties, Ltd., 914 F.2d 74, 76 (5th Cir. 1990)).

The standards for deciding Rule 12(c) motions are the same as those for deciding 12(b)(6) motions.  Id. at 313 n.8.  The court must not look beyond the pleadings.  Hughes v. Tobacco Inst., Inc., 278 F.3d 417, 420 (5th Cir. 2001).  It must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  Id.; Great Plains Trust Co., 313 F.3d at 312-13.  Only if it is clear that the plaintiff has no valid claim for relief -- that there are no set of facts he could prove in support of his claim that would entitle him to relief -- can the court enter a Rule 12(c) judgment for the defendant.  See Hughes, 278 F.3d at 420; Great Plains Trust Co., 313 F.3d at 312.

The standards governing review of Rule 12(c) motions must be considered in light of the liberal pleading requirements of Fed. R. Civ. P. 8(a).  The Supreme Court has reminded lower courts that a complaint need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"

<u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998 (2002) (quoting FED. R. CIV. P. 8(a)(2)).  The statement must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" <u>Id.</u> (quoting <u>Conley v. Gibson</u>, 78 S.Ct. 99, 103 (1957)).  This "simplified notice pleading standard" means that, with the exception of a limited set of cases,[23] a plaintiff need not plead facts supporting every element of his claims or legal theories. <u>Id</u>.  <u>See also Conley</u>, 78 S.Ct. at 103.  Instead, liberal discovery rules and summary judgment motions are relied upon "to define disputed facts and issues and to dispose of unmeritorious claims." <u>Swierkiewicz</u>, 122 S.Ct. at 998.  Accordingly, motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. <u>S. Christian Leadership Conference v. Sup. Ct. of La.</u>, 252 F.3d 781, 786 (5th Cir. 2001) (quoting <u>Tanglewood E. Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988)).

Although notice pleading does not require a complaint to expound the facts, a plaintiff who does so is bound by such exposition. <u>Bender v. Suburban Hosp., Inc.</u>, 159 F.3d 186, 192 (4th Cir. 1998) (citing <u>Jefferson v. Ambroz</u>, 90 F.3d 1291, 1296 (7th

---

[23]These exceptions are found in Rule 9(b), which provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  FED. R. CIV. P. 9(b).

Cir. 1996).  "[I]f a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck -- he has pleaded himself out of court.'" Jefferson, 90 F.3d at 1296 (quoting Thomas v. Farley, 31 F.3d 557, 558-59 (7th Cir. 1994)).

**C.   Rule 56 Motion for Summary Judgment**

Rule 56 indicates that an order granting summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  A "genuine" dispute over a fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Id.  In considering a summary judgment motion the court is to resolve any doubts and draw any inferences in favor of the nonmoving party. Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001).  But "in the absence of any proof" the court will not "assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands Ltd. v. Washington Capital DUS, Inc., 66 F.3d 89, 92 (5th Cir.), as modified, 70 F.3d 26 (5th Cir. 1995).

A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis original) (quoting Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2553 (1986)). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." Rizzo v. Children's World Learning Ctrs., Inc., 84 F.3d 758, 762 (5th Cir. 1996) (citing Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992)).  If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. Little, 37 F.3d at 1075.

If, however, the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial.  EEOC v. Texas Instruments Inc., 100 F.3d 1173, 1180 (5th Cir. 1996); Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996).  The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence.  Wallace, 80 F.3d at 1047; Little, 37 F.3d at 1075.

-9-

### III.  Analysis

**A.  Conversion Claim**[24]

In  count  one  of  its  Original  Petition  CPR  alleges  that
defendants'  "conduct  in  taking,  using  and  selling  [the  software]
system  amounts  to  conversion."[25]   Defendants  argue  that  federal
copyright  law  preempts  this  state  law  conversion  claim.[26]

Section  301(a)  of  the  Copyright  Act  states:

> On  and  after  January  1,  1978,  all  legal  or  equitable
> rights  that  are  equivalent  to  any  of  the  exclusive  rights
> within  the  general  scope  of  copyright  as  specified  by
> section  106  in  works  of  authorship  that  are  fixed  in  a
> tangible medium of expression and come within the subject
> matter  of  copyright  as  specified  by  sections  102  and  103,
> whether  created  before  or  after  that  date  and  whether
> published  or  unpublished,  are  governed  exclusively  by
> this  title.   Thereafter,  no  person  is  entitled  to  any
> such  right  or  equivalent  right  in  any  such  work  under  the
> common  law  or  statutes  of  any  State.

17 U.S.C. § 301(a).  Based on this provision, courts have developed
a  "two-step  test"  to  determine  whether  copyright  law  preempts  a
particular  state  law  claim.   <u>Daboub v. Gibbons</u>, 42 F.3d 285, 288-89
(5th  Cir.  1995).   <u>See also</u>  <u>United  States  ex  rel.  Berge  v.  Bd.  of</u>
<u>Trustees  of  the  Univ.  of  Ala.</u>, 104 F.3d 1453, 1463 (4th Cir. 1997).

---

[24]The  court  will  treat  defendants'  argument  as  to  the
conversion  claim  as  a  Rule  12(c)  Motion  for  Judgment  on  the
Pleadings.

[25]Plaintiff's  Original  Petition,  at  ¶  13,  attached  to  Notice
of  Removal,  Docket  Entry  No.  1.

[26]Defendants'  Motion  to  Dismiss  for  Failure  to  State  a  Claim
and  Alternate  Motion  for  Summary  Judgment,  Docket  Entry  No.  13,
p.  3.

The state claim is preempted if (1) the work at issue is within the subject matter of copyright and (2) the state cause of action protects rights that are equivalent to any of the exclusive rights (to reproduce, prepare derivative works, distribute, perform, and display) belonging to a copyright holder.  <u>See</u> <u>Daboub</u>, 42 F.3d at 289, 289 n.5; <u>United States ex rel. Berge</u>, 104 F.3d at 1463.

The first part of the preemption inquiry is satisfied in this case.  It is well-settled that "a computer program, whether in object code or source code, is a 'literary work'" protected by the federal copyright law.  <u>Apple Computer, Inc. v. Franklin Computer Corp.</u>, 714 F.2d 1240, 1249 (3d Cir. 1983); 17 U.S.C. § 102(a)(1) (listing "literary works" as a category of "original works of authorship" protected by copyright).  <u>See also</u> <u>Vault Corp. v. Quaid Software Ltd.</u>, 847 F.2d 255, 259, 259 n.5 (5th Cir. 1988) (stating that "Congress amended the Copyright Act in 1976 to include computer programs in the definition of protectable literary works" and citing to the legislative history in support); <u>Computer Associates Int'l, Inc. v. Altai, Inc.</u>, 982 F.2d 693, 702 (2d Cir. 1992) (stating that "[w]hile computer programs are not specifically listed as part of the . . . statutory definition, the legislative history leaves no doubt that Congress intended them to be considered literary works"); <u>Alcatel USA, Inc. v. DGI Technologies, Inc.</u>, 166 F.3d 772, 791 (5th Cir. 1999) (concluding that there was "no question that [the defendant] engaged in at least one act of

direct copyright infringement:   None dispute that [defendant's] personnel . . . made a copy of the [plaintiff's] operating system software. . . .   This unauthorized act clearly infringed [the plaintiff's] exclusive right to reproduce its software"). CPR does not argue that the Complete Works software program is outside the scope of the subject matter of copyright.

The issue is whether the second prong of the preemption test is satisfied in this case.   This second step is satisfied -- and federal copyright law preempts plaintiff's conversion claim -- unless the state claim includes an extra element that distinguishes it "so that it is '*qualitatively* different from a copyright infringement claim.'"   <u>United States ex rel. Berge</u>, 104 F.3d at 1463 (quoting <u>Rosciszewski v. Arete Associates, Inc.</u>, 1 F.3d 225, 229-30 (4th Cir. 1993)).   CPR contends that its conversion claim is not equivalent to a copyright claim because defendants "have admitted that they retained physical copies of Complete Works."[27] Quoting <u>United States ex rel. Berge</u>, CPR relies on the proposition that "[i]t is hornbook law that a 'state law action for conversion will not be preempted if the plaintiff can prove the extra element that the defendant unlawfully retained the physical object embodying plaintiff's work.'"[28]   <u>Id.</u> (citation omitted).   Defendants

---

[27]Plaintiff's Response, Docket Entry No. 18, p. 7.

[28]See <u>id.</u> at 6-7.

reply that federal law preempts because the "central complaint in this case is unauthorized copying."[29]

In Carson v. Dynegy, Inc., 344 F.3d 446 (5th Cir. 2003), the Fifth Circuit held that federal copyright law did not preempt a Texas claim in which the plaintiff alleged that his former employer had "illegally converted" "tangible copies" of a worksheet he had created using a spreadsheet program.  Id. at 448-50, 456-57.  The plaintiff had earlier written a letter to the defendant demanding return of all copies of the work at issue.  Id. at 450.  Noting that under Texas law conversion of physical property consists of the "'unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights,'" the Fifth Circuit concluded that the claim the defendant "wrongfully withheld [the worksheet] in its tangible forms" was qualitatively different than a copyright infringement claim.  Id. at 456 (quoting Waisath v. Lack's Stores, 474 S.W.2d 444, 447 (Tex. 1971)).  "[P]rotecting rights in physical property in this way" under state law, the court continued, "does not 'obstruct[] the accomplishment of the full purposes and objectives of' the Copyright act."  Id. at 457 (quoting Brown v. Ames, 201 F.3d 654, 659 (5th Cir. 2000)).

---

[29]Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment ("Defendants' Reply"), Docket Entry No. 21, p. 2.

Based on Carson the court is persuaded that CPR's conversion claim is not preempted by copyright law. According to the complaint, CPR, like the Carson plaintiff, sought return of all copies of the work at issue. CPR mentioned in its pleading of the conversion claim defendants' refusal to provide these copies.[30] It appears, then, that CPR is asserting an interest in certain tangible forms of the software, not merely an interest in the intellectual property rights related to that software. Under Carson the conversion claim is not equivalent to a copyright infringement claim.

CPR's conversion claim is not -- to borrow the Fifth Circuit's analogy in Daboub v. Gibbons -- simply a "ventriloquist's attempt to present a copyright action in the voice of state law claims." Daboub, 42 F.3d at 290. Conversion of physical property does not substitute for a copyright infringement claim, which centers on the rights to reproduce, distribute, perform, display, and prepare derivative works from a copyrighted work. See 17 U.S.C. § 106. The court is mindful that in Carson the plaintiff did not allege only conversion but also sought both a declaration that he owned all copyrights in the disputed work and a determination that the defendant had infringed those copyrights. Carson, 344 F.3d at 450. CPR has not alleged copyright infringement in the instant case.

---

[30]Plaintiff's Original Petition, at ¶ 13, attached to Notice of Removal, Docket Entry No. 1.

Because CPR's conversion claim is not preempted by federal copyright law, defendants' motion for a Rule 12(c) judgment will be denied.

## B.   Misappropriation of Trade Secrets[31]

Count two of CPR's Original Petition alleges that defendants misappropriated CPR trade secrets by "taking, using and selling" the Complete Works software system.[32]  Defendants argue that CPR cannot recover on this claim because the software at issue is not a trade secret that belongs to CPR.[33]

---

[31]Because the parties do not confine themselves to the pleadings, the court will treat defendants' argument as to the trade secrets claim as a motion for summary judgment.

[32]Id. at ¶ 15.

[33]See Defendants' Motion to Dismiss for Failure to State a Claim and Alternate Motion for Summary Judgment, Docket Entry No. 13, pp. 5, 7; Defendants' Reply, Docket Entry No. 21, pp. 6-7.  In the reply brief defendants argue also that plaintiff's trade secret claim is preempted by copyright law.  Defendants' Reply, Docket Entry No. 21, p. 7.  This belated argument is without merit.  Under Texas law the elements of a misappropriation of trade secrets claim are (1) existence of a trade secret, (2) breach of a confidential relationship or improper discovery of a trade secret, (3) use of the trade secret, and (4) damages.  Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. App. -- Austin 2004, pet. denied).  A trade secret includes a "substantial element of secrecy."  Sands v. Estate of Buys, 160 S.W.3d 684, 687 (Tex. App. -- Fort Worth 2005, no pet. h.).  The court is persuaded that this claim includes additional element(s) distinguishing it from a copyright infringement claim.  For instance, as the Second Circuit discussed in Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2d Cir. 1992),

(continued...)

A trade secret is "'any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it.'"   In re Bass, 113 S.W.3d 735, 739 (Tex. 2003) (quoting Computer Associates Int'l v. Altai, 918 S.W.2d 453, 455 (Tex. 1994)).  According to the Texas Supreme Court, a court should consider six factors when deciding whether a trade secret exists:  (1) the extent to which the information is known outside of the employer's business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of the measures taken by the employer to guard the secrecy of the information; (4) the value of the information to the employer and to the employer's competitors; (5) the amount of effort or money expended by the employer in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  See id.

---

[33](...continued)
[t]rade secret claims often are grounded upon a defendant's breach of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material. [citations omitted].  The defendant's breach of duty is the gravamen of such trade secret claims, and supplies the "extra element" that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying.

Id. at 717.  Furthermore, "trade secret doctrine protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law."  Id.

In its response to defendants' motion CPR points to evidence suggesting that most of these factors weigh in favor of a determination that it holds Complete Works as a trade secret. Citing the affidavit of its chief operating officer, CPR states that "[t]he particular configuration of Complete Works is not known outside of CPR," there is limited access to the system, employees are required to sign acknowledgments that they received copies of the company's policies regarding confidential information, and Complete Works gives CPR an advantage over competitors.[34]   The affidavit also states that CPR paid Kitba $15,000 to develop Complete Works and that CPR has spent $35,000 on system maintenance.[35]   CPR notes that Feltman acknowledged in his deposition that Complete Works was not generally known and is valuable to CPR.[36]

To avoid summary judgment, however, CPR must also raise a fact issue as to the ownership of the copyright in Complete Works. Although the <u>Bass</u> factors do not explicitly mention it, CPR could not prevail on its trade secret claim if defendants or some other party besides CPR held the "exclusive rights" under copyright law

---

[34]Plaintiff's Response, Docket Entry No. 18, p. 9 (citing Affidavit of Matthew Baker, Docket Entry No. 19, pp. 2-3).

[35]Affidavit of Matthew Baker, Docket Entry No. 19, p. 2.

[36]Plaintiff's Response, Docket Entry No. 18, p. 9 (citing Deposition of Robert Feltman, at p. 80, Exhibit 2 attached to Affidavit of Charles G. King, Docket Entry No. 20).

to reproduce or distribute the program.  Of the cases cited by CPR
to show that "computer software or programs are subject to trade
secret protection and misappropriation of trade secret claims,"[37]
not one indicates that a plaintiff could claim a proprietary
secrecy in another party's intellectual property.

    In Dun & Bradstreet Software Services, Inc. v. Grace
Consulting Inc., 307 F.3d 197 (3d Cir. 2002), the party asserting
the misappropriation of trade secret claim had "designed and
developed" the software at issue and was the "undisputed" owner of
the copyright.  Id. at 200, 207.  Similarly, Trandes Corp. v.
Guy F. Atkinson Co., 996 F.2d 655 (4th Cir. 1993), involved a
plaintiff claiming a trade secret in a computer program it had
created itself.  Id. at 657-58, 662.  Although the plaintiff had
not timely registered the software for copyright protection and
thus was unsuccessful in its claim for copyright infringement,
there was no suggestion that a copyright in the work belonged to
some other party.  See id. at 657 n.1, 657-60, 662-64.  The court
in Computer Associates Int'l, Inc. v. Altai, Inc., 982 F.2d 693 (2d
Cir. 1992), a case in which the plaintiff brought a misappropri-
ation claim based on trade secrets contained in its own copyrighted
computer program, implied that as to a particular work, trade
secret law *complements* a copyright owner's "exclusive rights":

_____

[37]Plaintiff's Response, Docket Entry No. 18, p. 9.

-18-

> Trade secret protection, the branch of unfair competition law at issue in this case, remains a "uniquely valuable" weapon in the defensive arsenal of computer programmers. [citation omitted].   Precisely because trade secret doctrine protects the discovery of ideas, processes, and systems which are explicitly precluded from coverage under copyright law, courts and commentators alike consider it a necessary and integral part of the intellectual property protection extended to computer programs.  [citations omitted].

Id. at 700, 717.

In their reply brief defendants make a credible argument that Kitba, the author of the software at issue, owns the copyright and did not assign it to CPR.  Defendants quote the written agreement between CPR and Kitba, emphasizing that it states CPR would "remain the sole owner" of intellectual property rights "incorporated into the products to be delivered by Kitba" and that CPR would not "have or acquire any rights to" the intellectual property of Kitba.[38] Defendants argue that this language means only that CPR did not lose any pre-existing rights to intellectual property when it signed the written agreement with Kitba.[39]  Relying on the affidavit of its chief operating officer, CPR insists that it "negotiated for and obtained the exclusive ownership of Complete Works in its agreement with Kitba."[40]  The affidavit states that CPR "considered

---

[38]Defendants' Reply, Docket Entry No. 21, pp. 4-5 (quoting Services Agreement, at p. 3, Appendix D attached thereto).

[39]Id. at 5.

[40]Plaintiff's Response, Docket Entry No. 18, p. 9 (citing Affidavit of Matthew Baker, Docket Entry No. 19, p. 1).

the software system being developed by Kitba . . . to be
confidential, proprietary. . . ."[41]

CPR raises a fact issue as to ownership of the copyright in
Complete Works -- but just barely.  On its own review of the CPR-
Kitba agreement, the court notes that the parties qualified the
statement about CPR not acquiring the rights to any intellectual
property of Kitba with the words "[e]xcept as specifically set
forth in this Agreement."[42]  The inclusion of this language might
imply that the agreement did transfer ownership of some
intellectual property from Kitba to CPR.  Further, the court is
mindful that in contrast to CPR, defendants were not parties to the
agreement.  Although defendants' reading of the contract is
reasonable, in light of CPR's contrary interpretation -- which is
supported (albeit weakly) by affidavit evidence and some language
in the agreement -- the court is not prepared to grant summary
judgment.

CPR should set out in the joint pretrial order all facts and
supporting documents demonstrating the precise nature of its
interest in the Complete Works software.  Given the importance of
the copyright issue to the maintenance of a trade secret claim, CPR

---

[41]Affidavit of Matthew Baker, Docket Entry No. 19, pp. 1-2.

[42]Services Agreement, at p. 3, Appendix D attached to
Defendants' Motion to Dismiss for Failure to State a Claim and
Alternate Motion for Summary Judgment, Docket Entry No. 13.

should include any evidence as to who owns the copyright in the work at issue.[43]

## C.  Breach of a Confidential Relationship

In count three of its original complaint CPR pleads a claim for breach of a confidential relationship.[44]  After asserting that the "relationship between Feltman and CPR was one of trust and confidence," plaintiff states that defendant Feltman "has breached this relationship" "[b]y disclosing and selling CPR's trade secrets to a competitor" -- the software system.[45]

---

[43]If it turns out that CPR does not own the copyright in the Complete Works software, it would appear that this court lacks subject matter jurisdiction over the case.  Defendants removed this case on the grounds that CPR alleges a claim for copyright infringement over which federal courts have exclusive jurisdiction.  But as explained, this court is not persuaded that copyright law preempts CPR's state-law claims for conversion and misappropriation of trade secrets.  Absent a showing that CPR owns the copyright, the court would be compelled to dismiss the case sua sponte for lack of subject matter jurisdiction.  See FED. R. CIV. P. 12(h)(3) (stating that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action"); Coury v. Prot, 85 F.3d 244, 249 (5th Cir. 1996) (indicating that "lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court"); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 548 (5th Cir. Unit A 1981) (explaining that "[w]here a federal court proceeds in a matter without first establishing that the dispute is within the province of controversies assigned to it by the Constitution and statute, the federal tribunal poaches upon the territory of a coordinate judicial system, and its decisions, opinions, and orders are of no effect").

[44]Plaintiff's Original Petition, at ¶¶ 16-17, attached to Notice of Removal, Docket Entry No. 1.

[45]Id. at ¶ 17.

Defendants have not explicitly referenced this claim in their pending motion for a Rule 12 judgment or for summary judgment. However, the ultimate success of this claim depends in part on the resolution of CPR's trade secrets claim:  If the Complete Works software does not constitute a trade secret belonging to CPR, defendant Feltman did not breach any relationship of trust and confidence by disclosing and selling it.

Furthermore, the court is skeptical that breach of a confidential relationship exists as a separate claim in this case. Under Texas law breach of a confidential relationship may be an element of a misappropriation of trade secrets claim. See Trilogy Software, Inc. v. Callidus Software, Inc., 143 S.W.3d 452, 463 (Tex. App. -- Austin 2004, pet. denied). CPR should clarify in the joint pretrial order the basis for maintaining it as a separate or alternative cause of action, with appropriate citation to Texas authority and any supporting facts.

## IV. Conclusion and Order

For the reasons discussed above, the court concludes that copyright law does not preempt plaintiff's conversion claim and that plaintiff has raised a fact issue as to the existence of a trade secret.  Accordingly, Defendants' Motion to Dismiss for

Failure to State a Claim and Alternate Motion for Summary Judgment
(Docket Entry No. 13) is **DENIED**.

     **SIGNED** at Houston, Texas, on this 12th day of August, 2005.


                                        _____
                                             SIM LAKE
                        UNITED STATES DISTRICT JUDGE